# Woodward Iron Company *v* Curl.

*Action by Parent for Injuries to Minor Child.*

(Decided Nov. 21, 1907.　44 So. Rep. 974.)

1. *Parent and Child; Injury to Child; Complaint; Sufficiency.*— The presumption being under the statute as well as under the common law that a minor child is a member of the family, in an action by the father for injury to a minor child, the complaint need not aver that the child was a member of the father's family.

2. *Same.*—A ˙complaint in an action by the father for injuries to his minor son based on the ground of the employment of the son without the consent of the father must go further and allege that that the work at which the minor was put by the defendant was at a dangerous place or dangerous work and that the injuries resulted from being placed at such dangerous work.

3. *Damages; Measure; Parent and Child; Father's Time.*—The measure of a father's damages on account of having to nurse his son through his injuries is not the amount of wages lost by the father but the value of his services as a nurse to his son.

4. *Same.*—The father can recover only such expenses as are necessarily and reasonably incurred in the treatment and cure of his child and was not entitled to recover the amount paid as railroad fare in going from the father's home to where the son was.

5. *Parent and Child; Injury to Child; Instruction.*—A charge asserting that to entitle the father to recover, it must be found that the son was a minor, that defendant did not have the father's consent to the employment of his son, and that the son was injured as a proximate consequence of the employment, is defective for failing to hypothesize that the son was employed by the defendant and in ignoring the dangerous character of the employment.

6. *Same.*—A charge asserting that if the jury found that the son was a minor and that he was employed by defendant without the father's consent then it was not necessary to find that the father objected to the employment because of its dangerous character, but a verdict should be rendered for the father if the minor was injured as a proximate consequence of the employment, is erroneous as rendering the defendant liable for the mere employment of the

minor although the work for which he was employed was not dangerous.

7. *Parent and Child; Employment of Child; Consent.*—Where the father gave a written consent for the employment of his son by defendant until revocation and ten days notice to defendant thereof, and the father expressly told the son to remain in such employment until a better place could be found, and subsequently the father wrote his son to go to another place and take a better job there; and on receiving the letter the son quit work for about a week and then told the superintendent of the defendant that his father had a better job for him and that he wanted the money due him, and the superintendent replied that the rule was not to pay except on pay day and that the son could go back to work until pay day when he could get what was due him, and the son did so and was injured, as a matter of law the employment was with the consent of the father, and he could not recover for injuries to his son.

APPEAL from Bessemer City Court.

Heard before Hon. William Jackson.

Action by I. S. Curl against the Woodward Iron Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The following charges were given by the court at the request of the plaintiff: "I charge you, gentlemen of the jury, that three things are necessary to entitle plaintiff to a recovery: (1) That Clinton Curl was a minor; (2) that the company did not have the father's consent to such employment; (3) That the said minor was injured as a proximate consequence of the employment." Charge 4: "I charge you, gentlemen of the jury, that if you find from the evidence that Cinton Curl was a minor, and if you further find that he was employed by the Woodward Iron Company without his father's knowledge and consent, then it is not necessary that you find the father objected to such employment because of its dangerous character; but you should find in favor of the plaintiff if you believe from the evidence that said Clinton Curl was injured as a proximate consequence of such employment." Charge 5: "If you find from the evidence in the case that defendant employed plaintiff's

minor son at work which was highly dangerous to him, or at a place which was highly dangerous to him, after notice that plaintiff objected to such employment, and as a proximate consequence to such employment he was injured as alleged in the complaint, then your verdict must be for the plaintiff."

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant. The court erred in overruling defendant's demurrer to the 1st count of the complaint.—*Williams v. S. & N. A. R. R. Co.*, 91 Ala. 639; *Marbury L. Co. v. Westbrook*, 121 Ala. 183. The court erred in permitting proof of the value of the time the father lost from his work in coming down and staying and nursing his son.—*Southern Ry. Co. v. Crowder*, 135 Ala. 417. The court erred in giving charge 3 requested by the plaintiff.—*Marbury L. Co. v. Westbrook, supra.* The court erred in giving charges 7 and 8 requested by plaintiff. The court should have given the affirmative charge for the defendant on each count in the complaint.

WARD & WARD, and T. T. HUEY, for appellee. The evidence objected to was admissible.—*Black v. Carrollton R. R. Co.*, 63 Am. Dec. 588. The court did not err in overruling demurrers to the complaint.—Section 25, Code 1896. Charges given at the request of the plaintiff were correct.—*Williams v. S. & N. A. R. R. Co.*, 91 Ala. 635. This case is also decisive of the main point in the case against the contention of the appellant.

SIMPSON, J.—This was an action by the appellee against the appellant for damages on account of injuries received by Clinton Curl, the 19 year old son of the plaintiff, while in the employment of the defendant. The first assignment of error relates to the action of the court in overruling the demurrer to the first count of the

complaint; the grounds of demurrer insisted upon being (1) that the count failed to aver that the plaintiff's son was a member of his family and dependent upon him, and (2) that it fails to show that the employment was a hazardous one. This count does not allege any act of negligence on the part of the defendant, but rests upon the allegation that said son was employed by the defendant without the knowledge or consent of the plaintiff, and while engaged in such employment was injured.

As to the first proposition, while it is true that our statute, providing for the right of the parent to sue for the injury to the child, does use the words, "a member of the family," yet, in so far as this refers to the right of a father to sue for the loss of the services of his minor child, this is but an affirmation of the principle already recognized by the common law, which presumes, unless the contrary be shown, that the minor child is a member of the family of the father, fixes upon him the duty of supporting his minor children, and confers on him the correlative right to the services of the child, and to an action against any one who wrongfully deprives him of them.—*Vanhorn v. Freeman,* 6 N. J. Law, 322, 329; Note to *Carey v. Berkshire R. R. Co.,* 1 Cush. (Mass.) 475, 48 Am. Dec. 622 et seq.; *Fairmount, etc., R. R. v. Stutler,* 54 Pa. 375, 93 Am. Dec. 714, 715; *Williams v. S. & N. Ala. R. Co.,* 91 Ala. 635, 638, 9 South. 77. The first count is sufficient as to said first ground of demurrer insisted upon.

As to the second insistence, said count does not allege any act of negligence, but relies upon the claim that the defendant employed said minor without the consent of the plaintiff. This court has held that one who employs a minor child without the consent of his father, and without such consent places him to work at a dangerous

place or upon a dangerous work, is liable to the father for any injury suffered by the minor as the result of being placed at such work.—*Williams v. S. & N. Ala. R. Co., supra; Marbury Lumber Co. v. Westbrook,* 121 Ala. 179, 25 South. 914, 1 Labatt's Master & Servant, § 21, p. 41; *Gulf, etc. Ry v. Redeker,* 75 Tex. 310, 12 S. W. 855, 16 Am. St. Rep. 887. In the *Marbury Lumber Company Case,* just cited, the court said: "The gravamen of the action obviously is the alleged wrong of the defendant in putting the plaintiff's minor son to work at a dangerous place or upon a dangerous work without her (the parent's) consent." Page 183 of 121 Ala., page 916 of 25 South. It follows, that the first count in this complaint should have alleged that the work at which the plaintiff's son was put by the defendant was dangerous, and that the demurrers should have been sustained on the second ground insisted upon.

The second assignment relates to the action of the court in overruling the objection to the question to the plaintiff as a witness, "What was the value of the time you lost from your work about coming down and staying here and nursing your son and going back before you went to work?" In this the court erred. The measure of damages on account of nursing his son was not the amount of his wages lost, "but the value of his services while so attending and nursing."—*So. Ry. Co. v. Crowder,* 135 Ala. 418, 428, 429, 430, 33 South. 335; *Barnes v. Keene,* 132 N. Y. 13, 29 N. E. 1090. In this action the parent was entitled to recover, as expenses, only those amounts which were necessarily and reasonably expended in and about the treatment and cure of his child. Hence it was error to allow proof as to the amount of his railroad fare in going from his home at Portersville to the home of his son at Bessemer.—13 Cyc. 146.

14 R

The court erred in giving charge numbered 3, on the request of the plaintiff, because, first, said charge does not hypothesize that the minor was employed at all by the defendant; and, second, it ignores the dangerous nature of the business in which said minor was engaged. The court erred in giving charge numbered 4, requested by the plaintiff, as that charge would make the defendant liable for the mere employment of the minor, although the work for which he was employed was not dangerous. There was no error in the giving of charge numbered 5, at the request of the plaintiff.

The evidence in this case shows that the minor who was injured was 18 years of age; that he had been in the employ of the defendant for a number of years; that on January 18, 1900, the father (plaintiff) had signed a paper giving his consent that the defendant should employ his said son, "and to pay him his wages, that may be agreed upon between him and the said Woodward Iron Company, until I revoke this consent, of which revocation I am to give the Woodward Iron Company 10 days' notice." This paper was delivered to said defendant and by it produced at the trial. According to some of the testimony, the plaintiff and his said son had continued in the employment of said defendant until about 13 and 14 days before the accident, when the father went to Portersville, to engage in other work, and left his son to continue working with defendant. According to the plaintiff's testimony, his said son had been out of the employment of defendant during the year 1894 to December; but he did continue to work there after that date with his father's consent, collected his wages each month, and handed them over to his father. The plaintiff testified that at some time in 1900 he told one Ludwig, who was then superintendent of defendant, that he

did not wish his son to continue to work there; but he does not remember whether that was before he signed the paper, or afterward. After the plaintiff went to Portersville (just how long, does not appear) he wrote to his son, telling him that he could get a better job for him at that place, and telling him to come there and take the job that he had for him there. The son states that, after receiving the letter from his father he "laid off" for about a week, and then went to Mr. Skews, the superintendent, and told him that his father had a job for him and wanted him to come to Portersville, and that he wanted the money that was due him; that Skews told him that the rule of the company was not to pay until pay day, but he could go back to work until pay day, and he would then get his money. This he did, and during that time he received the injury.

It is evident that, even if the written permission expired, by reason of the fact that the young man was out of the employment and back again during the time, yet it is uncontroverted that the last time he was employed it was with the consent of his father, who worked near him, and who expressly told him to remain in the employment until he found a better place for him. It is evident, also, that this employment was continuous until the time of the accident; for, although the young man says that he laid off for a week, yet he explains that by saying that he simply meant that he did not work. There was no such quitting as required a new employment. There was no new agreement as to pay or work, but he was simply told that he could go on working until pay day. There was no notice to the company that the father revoked his permission for him to work there, but only that he wished him to come to where he was, to get a better job. He did not specify any time, but evidently left it to the young man himself as to when he should

go; and the young man very properly understood that he was not to go until he received his "pay." Under all the facts of this case, the proof does not sustain the allegations that said Clinton Curl "was employed by the defendant without the knowledge or consent of the plaintiff," and that the defendant "wrongfully and without the consent" of plaintiff caused said Clinton to work. Consequently the general affirmative charge requested by the defendant should have been given.

The judgment of the court is reversed, and the cause remanded.

Tyson, C. J., and Anderson and Denson, JJ., concur.